NOT DESIGNATED FOR PUBLICATION

No. 118,053

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CARL M. BURRIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion on remand filed May 3, 2019. Affirmed in part and remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., PIERRON and STANDRIDGE, JJ.

PER CURIAM: After granting appellant's petition for review, the Kansas Supreme Court summarily vacated that portion of our opinion finding harmless the prosecutorial error in this matter and then remanded the case for us to reconsider harmlessness using the standard set forth in *State v. Sherman*, 305 Kan. 88, 111, 378 P.3d 1060 (2016). As directed, we have reconsidered the issue of harmlessness under the *Sherman* standard, and, for the following reasons, we find the prosecutor's error in closing argument was harmless.

1

FACTS

Carl M. Burris was convicted of aiding and abetting possession with intent to distribute a controlled substance. The following facts were presented to the jury at trial.

On August 24, 2016, Ronnie Gosson called the Clay County Sheriff's Department to report that Burris and a woman named Katie Herrera were on their way from the city of Miltonvale to Clay Center with drugs in Burris' vehicle. Dispatch connected Gosson to Deputy Jeff Browne. Gosson specifically advised Deputy Browne that there were syringes filled with methamphetamine under the passenger seat of Burris' truck. Based on this information, Deputy Browne drove to the county line in an effort to intercept the couple as they entered Clay Center. After waiting beside the highway for a period of time, Deputy Brown headed back into Clay Center to see if Burris was at his house. At some point, Deputy Browne received a second call from dispatch informing him that an individual named Sherry Reed had called to report that Herrera was selling methamphetamines in the courthouse square. As Deputy Browne passed the Burris house, he motioned to Samantha, Burris' wife, and she followed him.

Deputy Browne saw Burris' truck on the north side of the courthouse square. Browne approached Burris, who was sitting in his truck, and informed him of the reports of drugs in the truck. Burris said he was at the courthouse for Herrera to obtain a protection from abuse order against her husband. When Browne asked if he could search the truck, Burris replied that he did not believe there was anything under the seat. At this point, Samantha approached the passenger door and was listening through the open window. Deputy Browne repeated his request and Burris said he wanted to check first. As Burris walked to the passenger side of the vehicle, Samantha opened the door and looked under the passenger seat. Deputy Browne testified he could see Samantha's hands before she opened the door and did not observe anything in her hands. Samantha stepped away from the truck and told Burris not to let Deputy Browne search. Samantha testified she

2

could not see anything but had felt a baggie when she put her hand under the seat. Burris then looked under the seat and revoked his consent for Deputy Browne to search the truck.

Undersheriff Jim Bogart, the Clay County Sheriff's Department canine handler, arrived and walked the canine around Burris' truck. After the canine indicated there were drugs in the vehicle, Deputy Browne searched the truck. Under the passenger seat, he found a clear zipper baggie with three syringes filled with a clear liquid and one empty syringe. Deputy Browne arrested Burris for possession of methamphetamines with intent to distribute.

The next day, Deputy Browne interviewed Gosson, who reported that Samantha had called him the night before the arrest and told him that there were illegal substances under the passenger seat of Burris' truck. Gosson said Samantha asked him to call law enforcement and turn in her husband and Herrera. Gosson said Samantha called him again on Wednesday, the day of the arrest, to let him know Burris and Herrera were driving from Miltonvale to Clay Center. Though she did not mention the drugs, Gosson called the Clay County Sheriff's Department based on his assumption that the syringes were still in the truck. Gosson told Deputy Browne that he decided to call law enforcement because he blamed Herrera for Samantha and Burris separating after 30 years of marriage.

For her part, Samantha denied calling Gosson the night before the arrest to tell him about drugs in the truck; in fact, Samantha denied having access to a phone that night.

When interviewed during the investigation, Burris told Deputy Browne he believed Samantha had planted the drugs in his truck. At trial, Burris testified that he had worked as an informant for law enforcement before and previously had been involved

with Herrera in a Riley County drug deal as a result of that work. On cross-examination, however, Burris testified that the police were not involved in his possession of the methamphetamine syringes because sometimes opportunities to assist law enforcement appeared without warning.

The jury found Burris guilty of aiding and abetting possession of a controlled substance with the intent to distribute. The district court sentenced him to a 15-month term of imprisonment with the Kansas Department of Corrections with 24 months of postrelease supervision. The court assessed fees and costs, including $2,800 in BIDS attorney fees.

Burris appealed, citing prosecutorial error in closing argument and a failure by the district court to consider his financial situation before assessing BIDS attorney fees. In a memorandum opinion dated May 11, 2018, we found that the prosecutor erred by referring to facts not in evidence during closing argument but held that the improper reference had no effect on the verdict and was not prejudicial to Burris. *State v. Burris*, No. 118,053, 2018 WL 2170201, at \*6 (Kan. App. 2018) (unpublished opinion). On the second issue, we vacated the BIDS attorney fees and remanded to the district court for consideration of Burris' financial resources and the nature of the burden of the BIDS fees. 2018 WL 2170201, at \*6.

Burris filed a petition for review with regard to our decision on the issue of prosecutorial error. As noted above, the Kansas Supreme Court summarily vacated our opinion, in part, and remanded the case for us to reconsider the issue of harmlessness using the standard set forth in *Sherman*, 305 Kan. at 111.

ANALYSIS

Burris claims the prosecutor committed reversible error in closing argument by referring to facts not in evidence. We begin our analysis by reviewing the statements relevant to Burris' claim of reversible error.

In closing argument, the State acknowledged Burris' claim of working as an informant but also encouraged the jurors to use their knowledge of police techniques in determining whether a law enforcement agency would condone individuals engaging in buying or selling narcotics without police supervision. The State encouraged the jury to remember the uncontroverted facts of the case: Deputy Browne found Burris in his truck at the courthouse square with three syringes filled with methamphetamines under the passenger seat.

In response, defense counsel reminded the jury in closing argument that the entire chain of events in this case could be traced back to one person—Samantha. Counsel urged the jurors to consider the specificity with which Samantha provided information to Gosson. Defense counsel reminded the jury that in order to find Burris guilty of the crime charged, it had to find Burris had knowledge that the syringes were in his truck and that he had the intent to control them. With regard to the testimony during trial that Burris and Herrera took methamphetamines to the courthouse square to sell, counsel asked the jurors to think about how irrational it would be for a person to sell drugs at the courthouse square, which is located just around the corner from the law enforcement building. Specifically, counsel argued it would be "pretty stupid" to approach somebody in courthouse square to sell drugs with the police right around the corner.

In rebuttal, the State partially agreed with Burris' statement about the stupidity of selling drugs at the courthouse square:

"[Y]ou've got to be pretty stupid to sell on the courthouse square, or try, *but if you read the [Clay County] Dispatch, you know people have been arrested in this courthouse with drugs, inside the courthouse.*

"Pretty stupid?

"Absolutely.

"Do people who sell and use drugs do stupid stuff?

"I would say by definition. I would say by definition, they do."

Burris claims that portion of the prosecutor's argument italicized above uses facts not in evidence to persuade the jury to convict him, which constitutes reversible prosecutorial error. Our Supreme Court recently revamped the two-step framework for considering claims of prosecutorial error. See *Sherman*, 305 Kan. 88. Appellate courts must first determine whether prosecutorial error has occurred by deciding whether the prosecutor's actions fall outside the wide latitude afforded prosecutors. If error is found, the court moves to the prejudice step and applies the traditional constitutional harmlessness inquiry demanded by *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), i.e., whether the State can show there is no reasonable possibility that the error contributed to the verdict. *Sherman*, 305 Kan. at 109.

1. *Error*

The determination of the first step—whether the prosecutor's remarks are outside the wide latitude afforded prosecutors—is left unchanged by *Sherman*, 305 Kan. at 104. Under this analysis, it is clearly improper for a prosecutor to state facts that are not in evidence. *State v. Fisher*, 304 Kan. 242, 252, 373 P.3d 781 (2016). Here, the parties agree there was no evidence presented at trial from which a juror could reasonably infer that drugs previously had been sold in or near the courthouse. The parties also agree that no edition of *The Dispatch*, Clay Center's local paper, was introduced into evidence at trial. Because the prosecutor stated facts not in evidence during closing argument, we find the prosecutor's remarks are outside the wide latitude afforded prosecutors. As a result, we

6

move to the prejudice step to determine whether the State has shown there is no reasonable possibility that the error contributed to the verdict. *Sherman*, 305 Kan. at 109.

## 2. *Prejudice*

To determine whether the State has met its burden to show Burris was not prejudiced by the State's use of facts not in evidence at closing argument, we must "consider any and all alleged indicators of prejudice, as argued by the parties, and then determine whether the State has . . . shown there is no reasonable possibility that the error contributed to the verdict." *Sherman*, 305 Kan. at 111.

> "The focus of the inquiry is on the impact of the error on the verdict. While the strength of the evidence against the defendant may secondarily impact this analysis one way or the other, it must not become the primary focus of the inquiry. As has often been repeated, prejudice can exist even 'in a strong case.'" 305 Kan. at 111.

Burris argues the State's erroneous statement that the town newspaper had run stories that drugs had been previously sold in or near the courthouse was highly prejudicial to his defense. As required by *Sherman*, we consider each of the ways in which Burris claims this particular error prejudiced him and denied him a fair trial. To that end, Burris asserts the State's comment was highly prejudicial because a cornerstone of his defense was that he would not have been so bold as to sell drugs in the courthouse square, which is "around the corner from the law enforcement building." Alleging that Samantha had framed him, Burris claimed ignorance of the methamphetamines in his truck. At trial, Burris addressed the questionable report of Herrera attempting to sell drugs, noting that Sherry Reed (the second caller) may not actually exist; that Herrera did not have any drugs in her possession when she was arrested; and Samantha knew exactly where the methamphetamines were hidden.

7

We have considered Burris' indicators of prejudice, both individually and collectively, and conclude the State has sufficiently shown there is no reasonable possibility that the error contributed to the verdict. See 305 Kan. at 111. Based on the theory of defense presented by Burris at trial, the issue to be decided by the jury was whether on the day in question, Burris knew there was methamphetamine under the front passenger seat of the truck. Burris claimed that he was not so bold as to knowingly take methamphetamines to the courthouse; therefore, Samantha must have planted the syringes in the truck at some point. But whether Burris was bold enough to knowingly possess methamphetamine that close to a courthouse and police station is an issue totally divorced from a statement alleging hypothetical news of previous arrests for possession of illegal narcotics inside the courthouse. And the hypothetical news of these previous arrests is completely unrelated to the issue of whether Samantha framed him because she was the only person who knew exactly where the drugs were hidden.

Moreover, the jury was instructed by the district court before closing arguments that it must disregard statements made by counsel that were not supported by evidence introduced at trial:

> "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded. It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regards to the matter about which a witness has testified."

While this jury instruction does not excuse the State's error, we may consider the instruction as a factor in deciding whether the State has shown there is no reasonable possibility that the error contributed to the verdict. See *State v. Barber*, 302 Kan. 367, 383, 353 P.3d 1108 (2015). When a trial court instructs a jury to disregard any statements

8

by counsel not supported by evidence, appellate courts presume the jury followed that instruction. 302 Kan. at 383.

In addition to the district court's instruction, the prosecutor's own remarks during closing argument directed the jury to consider only the evidence presented at trial to resolve any dispute in fact. The prosecutor reviewed the evidence with the jury, stating it was the jury's prerogative to determine the credibility of the witnesses and to decide the case based on the evidence.

Considering the alleged indicators of prejudice as argued by the parties, we conclude the State has met its burden to show that there is no reasonable possibility that the prosecutor's error, which alleged hypothetical news of previous arrests for possession of illegal narcotics inside the courthouse, contributed to the verdict.

Affirmed.